UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA

v.                                                                                          8:09-CR-0047
                                                                                            (GTS)
CHRISTOPHER LISTON DAVIS,

                    Defendant.
_____

APPEARANCES:                                                                    OF COUNSEL:

HON. ANDREW T. BAXTER                                                ELIZABETH A. HORSMAN
  United States Attorney for the Northern District of New York
  Counsel for the Government
James T. Foley U.S. Courthouse
Albany, NY 12207-2924

FEDERAL PUBLIC DEFENDER                                         GEORGE E. BAIRD, JR.
  Counsel for Defendants
Office of the Federal Public Defender
39 North Pearl Street, 5th Floor
Albany, NY 12207

HON. GLENN T. SUDDABY, United States District Judge

## DECISION and ORDER

      Currently before the Court, in this criminal proceeding, are four motions *in limine* filed by Christopher Liston Davis (hereinafter "Defendant"), as well as a request by the Government to instruct the jury on willful blindness. For the reasons set forth below, the Court grants in part and denies in part Defendant's four motions *in limine*, and the Court reserves on the Government's request to instruct the jury on willful blindness.[1]

---

[1] The Court notes that Defendant's motion to dismiss Count 3 of the Superseding Indictment (for failure to properly instruct the grand jury on the knowledge element of the offense of Aggravated Identity Theft) has been rendered moot by the issuance of a Second Superseding Indictment on May 22, 2009. (Dkt. No. 32.)

I.      **FACTUAL BACKGROUND**

On January 19, 2009, Defendant applied to enter the United States by Amtrak train near Champlain, New York. Defendant presented the following documentation, all in the name of Robert Alan Smith, to United States Customs and Border Protection ("CBP") Enforcement officers Noel Barriere and Andrew Harder: (1) a United States passport issued February 16, 1999; (2) a certified San Diego County "Certificate of Live Birth"; and (3) a Florida drivers' license.[2] Defendant also completed a Customs Declaration form and listed his name as Robert Alan Smith and date of birth as that which appears on each of the three identification documents.

CBP officers ultimately fingerprinted Defendant and learned that his true identity was Christopher Liston Davis. When fingerprinted, Defendant admitted that his true identity was not, in fact, Robert Alan Smith, that he was not a citizen of the United States, and that he had no legal authority to enter or attempt to enter the United States.

Through fingerprint analysis and records checks, CBP Enforcement Officers Barriere and Harder learned that Defendant was previously removed from the United States to his native country Jamaica, on or about April 23, 2002.[3] Records checks also proved that Defendant neither applied for nor received permission of the Attorney General or the Secretary of the Department of Homeland Security to apply to reenter the United States.

On January 19, 2009, CBP officers also found in Defendant's possession the following other documents or items, all also in the name of Robert Alan Smith: (1) a Florida Voter ID

---

[2]     The United States passport and Florida drivers' license both bear Defendant's photograph.

[3]     Defendant was removed as an aggravated felon due to his drug trafficking related convictions in Massachusetts in 1993 and 1999.

(registration) Card showing registration on March 2, 2004; (2) an expired Florida drivers' license issued on October 1, 1998, and reissued as duplicate on October 13, 1999; (3) bank credit cards and access devices; and (4) two other identification cards. CBP officers found no identification documents in Defendant's belongings that indicated his true name.

The United States Department of State, through its Special Agent Bruce Palumbo, provided CBP Enforcement Officer Barriere with a copy of the original 1999 passport application submitted to his agency by Defendant. The application lists the items used by Defendant to prove United States citizenship and birth, including the same birth certificate number and drivers' license number that Defendant presented to CBP officers on January 19, 2009.

Department of Homeland Security records indicate that Defendant used the fraudulent "Robert Alan Smith United States passport" to enter and depart the United States on numerous occasions.

## II.   RELEVANT PROCEDURAL BACKGROUND

On February 26, 2009, the Grand Jury returned a three-count Superseding Indictment against Defendant. The Superseding Indictment charges Defendant, who is a citizen of Jamaica and has no legal immigration status in the United States, with three crimes, each arising out of his conduct on January 19, 2009, near Champlain, New York: (1) attempted entry of removed alien (aggravated felon), in violation of 8 U.S.C. § 1326(a) and (b); (2) false use of passport, in violation of 18 U.S.C. § 1542; and (3) aggravated identity theft, in violation of 18 U.S.C. § 1028A(a)(1), (c)(7), and (c)(10). On May 22, 2009, the Grand Jury returned a Second Superseding Indictment against Defendant, regarding the same three counts. (Dkt. No. 32.)

Currently before the Court are Defendant's four motions *in limine*. Specifically, Defendant makes the following requests: (1) that the Government be precluded from arguing that a rational jury could find beyond a reasonable doubt that Defendant knew that the documents he possessed (passport, license, birth certificate) belonged to another actual person; (2) that the Government Accountability Office ("GAO") report on the vulnerabilities of the passport oversight system be admitted into evidence under either Fed. R. Evid. 201 or Fed. R. Evid. 902; (3) that all references in the indictment to Defendant being an Aggravated Felon be stricken, and that the Government be precluded from referencing or offering evidence of Defendant's prior conviction for an Aggravated Felony; and (4) that the Government be precluded from mentioning Defendant's prior criminal convictions for impeachment purposes pursuant to Fed. R. Evid. 609.

### III. DISCUSSION

#### A. Defendant's Motions *in Limine*

##### 1. Whether the Issue of Defendant's "Knowledge" Should be Presented to the Jury

In his first motion *in limine*, Defendant argues that the Government should be precluded from arguing that a rational jury could find beyond a reasonable doubt that Defendant knew that the documents he possessed (passport, license, birth certificate) belonged to another actual person. In support of his request, Defendant essentially offers two arguments. First, Defendant argues that the Government will argue that Defendant knew that the documents went to another actual person because Defendant successfully used the birth certificate to apply for the passport. Defendant argues that the Government's argument relies on two premises that the Government cannot prove: (1) U.S. passports may be successfully obtained only after the submission of

genuine birth certificates; and (2) Defendant knew that U.S. passports may be successfully obtained only after the submission of genuine birth certificates (and never after the submission of counterfeit birth certificates). Defendant asserts that the GAO study demonstrates that U.S. passports may be successfully obtained without the submission of genuine birth certificates. As a result, Defendant argues that the Government should be precluded from arguing that Defendant knew that the passport, birth certificate and other identifications belonged to another actual person.

Second, Defendant argues that this case is distinguishable from the types of cases cited by the Supreme Court in *Flores-Figueroa*,[4] which involved the theft of identities of living persons who could suffer adverse consequences or impact as a result of the theft. Here, the actual person whose identity was stolen was long-since deceased at the time Defendant used his identity.   In response, the Government argues that the issue of Defendant's knowledge is a question of fact for the jury to decide, and that knowledge may be inferred through circumstantial evidence.

With regard to Defendant's first argument, it is well-settled that the mental state of

---

[4] The aggravated identity theft statute, 18 U.S.C. § 1028A(a)(1), provides that "[w]hoever, during and in relation to any felony violation enumerated in [§ 1028A(c)], knowingly transfers, possesses, or uses, without lawful authority, a means of identification of another person shall, in addition to the punishment provided for such felony, be sentenced to a term of imprisonment of 2 years." Circuits were split over whether the statute requires the Government to prove that the defendant knew the means of identification belonged to a real person. *Cf. United States v. Godin*, 534 F.3d 51 (1st Cir. 2008) (knowledge requirement applies to "of another person") with *United States v. Mendoza-Gonzalez*, 520 F.3d 912, 915 (8th Cir. 2008) (finding that "knowingly" only modifies "transfers, possesses, or uses" and therefore the Government must only prove "that the means of identification in fact belonged to a real person, not that the defendant knew that it did."). To resolve this split, the Supreme Court granted certiorari. *Flores-Figueroa v. United States*, No. 08-108, 2009 WL 1174852 (2009).

"knowledge" may be inferred from circumstantial evidence. *See U.S. v. Kallash*, 785 F.2d 26, 28 n.2 (2d Cir. 1986) (affirming district court jury instruction that "[k]nowledge may be inferred from acts and . . . inferences that may arise from a combination of acts"); *U.S. v. Beachem*, 399 F. Supp.2d 1156, 1158 (W.D. Wash. 2005) (noting that "circumstantial evidence which proves that [the defendant] had knowledge that the identification numbers she allegedly used belonged to someone else . . . raises a question of material fact that is more appropriate for a jury."). Under the circumstances, whether or not Defendant had knowledge that he was using the identity of an actual person is a question of fact for the jury to decide.

With regard to Defendant's second argument, Defendant conceded during the final pretrial conference that the statute in question–18 U.S.C. § 1028A(a)(1)–does not on its face require the victim to be alive at the time of theft.[5]

As a result, Defendant's motion to preclude the Government from arguing that a rational jury could find beyond a reasonable doubt that Defendant knew that the documents he possessed (passport, license, birth certificate) belonged to another actual person is denied.

### 2. Whether the GAO Report is Admissible

In his second motion *in limine*, Defendant argues that the GAO report on the vulnerabilities of the passport oversight system should be admitted into evidence under either Fed. R. Evid. 201 or Fed. R. Evid. 902. In support of this request, Defendant argues that the

---

[5] The Court notes that it appears that every federal court that has addressed this issue has found that the identity theft need not be of a living person. *See, e.g., U.S. v. Kowal*, 486 F. Supp.2d 923, 934 (N.D. Iowa 2007), *aff'd*, 527 F.3d 741, 746-57 (8th Cir. 2008); *U.S. v. Jiminez*, 05-CR-10058, 2005 WL 2453814 (D. Mass. Oct. 4 2005), *aff'd*, 507 F.3d 13, 18-20 (1st Cir. 2007); *U.S. v. Maciel-Alcala*, 08-CR-0395, 2008 WL 4369299, at *2-3 (C.D. Cal. Sept. 18, 2008); *U.S. v. Shain*, 08-CR-0112, 2008 WL 2940641, at *5 (W.D. Wash. July 24, 2008). Moreover, the Court finds that nothing in *Flores-Figueroa* reverses this rule.

report is relevant to rebut expert testimony on the effectiveness of the passport oversight system. In response, the Government argues that the GAO report is irrelevant because the study was conducted in 2008, and Defendant obtained the birth certificate (which he used to obtain the other documents) in 1999.

Under the Federal Rules of Evidence, "'[r]elevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. "All relevant evidence is admissible, except as otherwise provided by . . . these rules . . . .." Fed. R. Evid. 402. "Evidence which is not relevant is not admissible." Fed. R. Evid. 402. One of the rules that excludes relevant evidence under certain circumstances is Fed. R. Evid. 403, which provides as follows: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403.

Rule 201 states that "[a] judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201.

Rule 902 states, in relevant part, that "[e]xtrinsic evidence of authenticity as a condition precedent to admissibility is not required with respect to . . . [b]ooks, pamphlets, or other publications purporting to be issued by public authority." Fed. R. Evid. 902.

Hearsay is "an out-of-court statement offered for the truth of the fact asserted in the

statement." *Schering Corp. v. Pfizer Inc.*, 189 F.3d 218, 224 (2d Cir. 1999). A "statement" includes a "written assertion." Fed. R. Evid. 801.

The Court finds that the GAO study is (minimally) relevant on the issue of the vulnerabilities of the passport oversight system. The Court also finds that the report is not unduly prejudicial to the Government's case in chief. However, because this report is simply an expression of findings based on four test scenarios, the Court finds as a matter of law that the conclusions can reasonably be questioned. In addition, because Defendant seeks to offer the report for its truth, it is hearsay.

Rule 803 is an exception to the hearsay rule. Rule 803(8), provides that

> [r]ecords, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth (A) the activities of the office or agency, or (B) matters observed pursuant to duty imposed by law as to which matters there was a duty to report, excluding, however, in criminal cases matters observed by police officers and other law enforcement personnel, or (C) in civil actions and proceedings and against the Government in criminal cases, factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness.

Fed. R. Evid. 803(8).

The GAO report consists of factual findings resulting from an investigation made pursuant to authority granted by law. Of course, this is not a civil case. Therefore, the report is not admissible under Part "(B)" of this hearsay exception. However, it is conceivable (at least, based on the briefing by the parties thus far) that the report may be admissible under Part "(C)" of this hearsay exception.

The Court notes that Fed. R. Evid. 803(6) provides that

> [a] memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record or data compilation, all as shown by the testimony of the custodian or other qualified witness, or by certification that complies with Rule 902(11), Rule 902(12), or a statute permitting certification, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. The term "business" as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.

Fed. R. Evid. 803(6). However, the Court has been unable to find any decisions from within this Circuit applying Fed. R. Evid. 803(6) to Government reports. *See U.S. v. American Cyanamid Co.*, 427 F. Supp. 859, 867 (S.D.N.Y. 1977) ("The business-records exception of Rule 803(6) is simply not applicable to government records and reports, which are to be admitted in accordance with the standards of Rule 803(8).").

In any event, the Court need not decide whether the GAO report is admissible under either of these two hearsay exceptions. This is because, during the final pretrial conference, Defendant recharacterized his request as asking that he be permitted to use the GAO report to identify the vulnerabilities in the passport oversight system, in order to rebut any Government expert testimony that the system is not as vulnerable as the GAO report indicates. Because Defendant has the right to impeach the credibility of any witness, the Court finds that the GAO report may be used for the stated purpose of identifying the vulnerabilities in the passport oversight system, in order to rebut any Government expert testimony that the system is not as vulnerable as the GAO report indicates.

### 3. Whether References in the Indictment to Defendant's Criminal History Should be Stricken

In his third motion *in limine*, Defendant argues that all references in the indictment to Defendant being an Aggravated Felon should be stricken, and that the Government should be precluded from referencing or offering evidence of Defendant's prior conviction for an Aggravated Felony.[6]  Defendant argues that his prior felony conviction does not give rise to a separate criminal offense, but instead allows for a sentence enhancement.  As a result, Defendant argues that proof of his prior felony conviction should only be considered by the Judge, and that this information could be highly prejudicial if revealed to the jury.

As stated in *United States v. Cole*, 32 F.3d 16 (2d Cir. 1994), Defendant's prior felony conviction is not a separate crime, but is consideration that allows for sentence enhancement.  In addition, Defendant's criminal history could be prejudicial in this action, and it has little, if any, probative value given that Defendant was convicted twice on drug trafficking charges.  The only relevance for the information is that it proves that Defendant knew that he had no legal right to be in the United States.

As a result, the Court grants Defendant's motion to preclude the Government from introducing any facts surrounding Defendant's criminal history.  However, as discussed during the final pretrial conference, the Government is permitted to introduce evidence that Defendant was barred for life from re-entering the United States, and that Defendant was aware of this fact.

---

[6] The references occur in Count 1 and Count 3 of the Superceding Indictment.

### 4. Whether Evidence of Defendant's Prior Convictions is Admissible

In his fourth motion *in limine*, Defendant argues that the Government be precluded from mentioning Defendant's prior criminal convictions for impeachment purposes pursuant to Fed. R. Evid. 609 because Defendant's prior convictions are not probative of truthfulness. In response, the Government argues that, should Defendant testify at trial, the Government should be free to impeach him with evidence of his felony convictions because this case involves Defendant's credibility.

"Convictions for narcotic offenses are usually not considered to involve dishonesty or false statement." *Fletcher*, 54 F. Supp.2d at 331 n.3 (citing 4 Jack B. Weinstein & Margaret A. Berger, Weinstein's Federal Evidence, § 609.03[2][b][iii] [2nd ed.1998]); *see also United States v. Hayes*, 553 F.2d 824, 827-828 (2d Cir. 1977), *cert. denied*, 434 U.S. 867, 98 S.Ct. 204, 54 L.Ed.2d 143 (1977) (barring evidence of conviction for importation of cocaine under Fed. R. Evid. 609(a) because government failed to provide specific facts relating to dishonesty or false statement).

Defendant was convicted in 1993 of cocaine trafficking, and was sentenced to 15-20 years, with all but five years suspended. On November 5, 1999, Defendant was convicted of distribution of marijuana and was sentenced to one year in jail.

With regard to Defendant's first conviction, more than ten years have passed since Defendant concluded his sentence on that conviction, and drug crimes are not probative of truthfulness. As a result, Defendant's motion to preclude the introduction of evidence related to this conviction is granted.

With regard to Defendant's second conviction, because less than ten years have passed

since the date of his release on that conviction, Fed. R. Evid. 601(a)(1) requires that the Court determine whether the probative value of admitting this evidence outweighs its prejudicial effect to Defendant. Because drug convictions are not probative of truthfulness, and there is a potential for prejudice if the convictions are introduced, Defendant's motion to preclude the introduction of evidence related to this conviction is granted.

### B.      Jury Instruction on "Willful Blindness"

The Government argues that a jury instruction that knowledge may be inferred from "willful blindness" to the truth is appropriate. Although no court within the Second Circuit has ever addressed the appropriateness of a "willful blindness" instruction in the context of an Aggravated Identity Theft Charge, the Second Circuit has made clear when a jury instruction of willful blindness is appropriate. *See U.S. v. Klein*, 216 F. App'x 84, 89 (2d Cir. Feb. 5, 2007) (referring to a "willful blindness" charge as "the conscious avoidance charge," consistent with the language used by almost all courts within the Second Circuit.)

In *Klein*, the Second Circuit indicated that "[a] conscious-avoidance charge is appropriate when (a) the element of knowledge is in dispute, and (b) the evidence would permit a rational juror to conclude beyond a reasonable doubt that the defendant was aware of a high probability of the fact in dispute and consciously avoided confirming that fact." *Klein*, 216 F. App'x at 89 (internal quotation marks and citation omitted) (finding that such an instruction was appropriate where the Government, in a bank fraud case, was required to prove that the defendant knowingly executed "a scheme or artifice" to defraud a financial institution or obtain moneys by fraudulent purposes, and the defendant testified that he did not know that his conduct was wrong, or that the purpose of check-trading was bank fraud, and the Government proved several suspicious

circumstances that would have alerted the defendant to the fraud unless he consciously avoided knowledge.). However, "a conscious avoidance instruction is not appropriate when the evidence is that the defendant had either actual knowledge or no knowledge at all of the facts in question." *U.S. v. Pierre*, 285 F. App'x. 828, 830 (2d Cir. July 17, 2008) (internal quotation marks and citations omitted). "Deliberately contriving not to learn the key facts (as opposed to merely failing to learn them through negligence) is essential to the concept of conscious avoidance." *Pierre*, 285 F. App'x. at 830 (citation omitted). In addition, "a conscious avoidance charge is not inappropriate merely because the government has primarily attempted to prove that the defendant had actual knowledge, while urging in the alternative that if the defendant lacked such knowledge it was only because he had studiously sought to avoid knowing what was plain." *Id*. (internal quotation marks and citation omitted).

In this case, it appears that Defense Counsel will argue that a passport may be obtained using a fake identity–i.e. not a real person's identity–and that his client did not know that the identity that he was using belonged to a real person. Conversely, it appears that the Government will offer evidence that Defendant was able to use this identity in question to successfully obtain numerous official documents over a lengthy period of time, demonstrating the genuineness of the identity.

Certainly, the element of knowledge is in dispute. However, whether or not the instruction is appropriate will depend on the evidence that the Government introduces at trial. Specifically, it is unclear at this point whether the evidence will be that Defendant had actual knowledge or no knowledge of all of the facts in question (with no possibility that he was aware of a high probability of the fact in dispute and consciously avoided confirming that fact).

Finally, two additional points bear mentioning. First, generally, "in giving the conscious

avoidance charge, the district judge should instruct the jury [, among other things,] that knowledge of the existence of a particular fact is established (1) if a person is aware of a high probability of its existence, (2) unless he actually believes that it does not exist." *U.S. v. Feroz*, 848 F.2d 359, 360 (2d Cir. 1988).

Second, it appears that only two courts in other circuits have addressed the issue of whether or not a willful blindness charge is appropriate in an identity theft case. *See U.S. v. Godin*, 476 F. Supp.2d 1, 3 n.3 (D. Me. 2007); *U.S. v. Montejo*, 353 F. Supp.2d 643, 646 (E.D. Va. 2005). In *U.S. v. Godin*, the court noted that whether or not such an instruction is appropriate would depend on whether "the evidence supports such an instruction." *U.S. v. Godin*, 476 F. Supp.2d at 3 n.3.[7]

In *U.S. v. Montejo*, the Government argued that, "even if § 1028A(a)(1) requires the accused to have known that the means of identification actually belonged to another person, Montejo's conduct was willfully blind to that possibility, which in and of itself satisfies the requirement of 'knowledge.'" *Montejo*, 353 F. Supp.2d at 646. After implicitly recognizing that the willful blindness standard could be applicable in some circumstances, the court concluded that "[t]he evidence [wa]s insufficient to find that [defendant] was willfully blind to the fact that the means of identification belonged to someone else." *Id*. at 656. The court further concluded that "[i]n fact, there [wa]s no evidence whatsoever that [defendant]'s failure to realize that the means of identification belonged to another person amounted to an attempt to cheat the administration of justice." *Id*.[8]

---

[7] It should be noted that the court in *Godin* concluded that the term "knowingly" does not apply to the phrase "of another person" in the Aggravated Identity Theft statute.

[8] However, the court found that, because "the mens rea requirement of § 1028A(a)(1) does not extend to the means of identification, . . . the point is irrelevant." *Id*.

14

**ACCORDINGLY**, it is

**ORDERED** that Defendant's motions *in limine* are **GRANTED in part and DENIED in part** as set forth above; and it is further

**ORDERED** that decision is **RESERVED** on the Government's request for a jury instruction on willful blindness; and it is further

**ORDERED** that Defendant's motion to dismiss Count 3 of the Superseding Indictment (for failure to properly instruct the grand jury on the knowledge element of the offense of Aggravated Identity Theft) is **DENIED as moot**, in light of the issuance of a Second Superseding Indictment on May 22, 2009.

Dated: May 27, 2009
       Syracuse, New York

Hon. Glenn T. Suddaby
U.S. District Judge